KAEB v KAEB

Docket No. 319574. Submitted March 4, 2015, at Grand Rapids. Decided
    March 12, 2015, at 9:10 a.m.

Plaintiff, Stephanie Kaeb, filed a divorce action against defendant,
    Darin Kaeb, in the Ottawa Circuit Court, which entered a
    consent judgment granting the parties joint legal and physical
    custody over their three children. In 2011, Stephanie petitioned
    for a custody review, alleging, *inter alia*, that Darin had an
    alcohol problem that interfered with his ability to provide proper
    care for the children. In September 2011, the court, Jon A. Van
    Allsburg, J., entered an order giving Stephanie sole legal and
    physical custody and giving Darin very limited supervised
    parenting time. The order also required that Darin complete
    alcohol treatment and attend counseling. Through subsequent
    orders, the court gradually increased Darin's parenting time
    and eventually allowed him to have unsupervised parenting
    time. The orders continued the requirements that Darin partici-
    pate in alcohol treatment and counseling. The court held a
    review hearing in May 2013. At the conclusion of the hearing,
    the court again expanded Darin's parenting time. The court also
    continued the requirements for alcohol treatment and counsel-
    ing. The court entered a written order that was consistent with
    its decision from the bench in June 2013. In August 2013, Darin
    moved to amend the court's June 2013 order, seeking the
    removal of the requirements for alcohol treatment and counsel-
    ing. In support of the motion, Darin attached a report by Dr.
    Michael Makedonsky, who opined that there was no clinical
    need for Darin to continue alcohol treatment. Darin also sup-
    ported the motion with a letter from his counselor, Dr. Brent
    Ellens, who stated that Darin had made sufficient progress in
    developing the ability to manage his frustration and stress that
    he could manage his life without further counseling. At the
    conclusion of the hearing on Darin's motion, the court stated
    that there had been no change of circumstances since the May
    2013 hearing. The court held that Darin's motion was without
    legal basis and was, therefore, frivolous. The court ordered
    Darin to pay Stephanie's costs and attorney fees associated with
    responding to the motion as a sanction. Notwithstanding its

determination that Darin's motion was frivolous, the court canceled the requirements that Darin participate in alcohol treatment and counseling. Darin appealed.

The Court of Appeals *held*:

Under MCR 2.114(D)(2), the signature of a party or attorney on a motion constitutes certification by the signer that to the best of his or her knowledge, information, and belief the motion is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. If a document is signed in violation of MCR 2.114(D)(2), the court, under MCR 2.114(E), shall impose on the signer, the represented party, or both, an appropriate sanction. Under MCL 722.27(1), a trial court may provide for reasonable parenting time by general or specific terms and conditions, and may modify its previous orders for proper cause shown or because of a change of circumstances. What constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the requested amendment or modification. If the request involves a change that alters an established custodial environment, then the more stringent framework from *Vodvarka v Grasmeyer*, 259 Mich App 499 (2003), will apply. If, however, the request involves a change to the duration or frequency of parenting time, the less stringent standard discussed in *Shade v Wright*, 291 Mich App 17 (2010), will apply. The imposition, revocation, or modification of a condition on the exercise of parenting time will generally not affect an established custodial environment or alter the frequency or duration of parenting time. Therefore, a more flexible understanding of "proper cause" or "change in circumstances" applies to a request to modify or amend a condition on parenting time; that is, a party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change of circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests. In this case, the trial court clearly erred when it found that Darin's motion was submitted in violation of MCR 2.114(D)(2). The documents submitted with the motion were sufficient to establish proper cause for the trial court reconsider whether the conditions imposed on Darin's parenting time remained in the children's best interests. Although the trial court was free to reject the opinions in those documents and conclude that it was in the children's best interests to continue to impose those conditions, that alone did not warrant finding that the motion was frivolous. Therefore, the trial court erred when it

ordered, under MCR 2.114(E), that Darin pay Stephanie's costs and attorney fees associated with the motion.

Trial court decision ordering sanctions reversed, trial court orders requiring Darin to pay costs and fees to Stephanie vacated, and case remanded for further proceedings.

MURPHY, J., concurring in part and dissenting in part, would have affirmed the trial court's order awarding attorney fees incurred by Stephanie in responding to Darin's motion. It was clear from the record that following the evidentiary hearing on May 31, 2013, defendant almost immediately defied the court's ruling regarding required attendance at alcohol treatment and counseling and instead sought support for his view that he was not in need of counseling or alcohol treatment. This was not a situation in which the conditions no longer served the children's best interests. In this case, there was no proper cause to revisit the parenting-time conditions, nor was there any change of circumstances. Accordingly, Darin's motion to modify the conditions was not well grounded in fact or warranted by existing law and the imposition of attorney-fee sanctions under MCR 2.114(E) was appropriate. The trial court did not clearly err by ruling that defendant's motion was frivolous.

DIVORCE — CHILD CUSTODY — CONDITIONS ON PARENTING TIME — MODIFICATION — PROPER CAUSE OR A CHANGE OF CIRCUMSTANCES.

Under MCL 722.27(1), a trial court may provide for reasonable parenting time by general or specific terms and conditions, and may modify its previous orders for proper cause shown or because of a change of circumstances; what constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the requested amendment or modification; a party requesting a change to an existing condition on the exercise of parenting time that will not affect an established custodial environment or alter the frequency or duration of parenting time must only demonstrate proper cause or a change of circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests.

*Scholten Fant* (by *Douglas J. Rooks*) for Stephanie Kaeb.

*Bregman & Welch* (by *Judy E. Bregman*) for Darin Kaeb.

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

M. J. KELLY, P.J. In this appeal arising out of a parenting-time dispute, defendant, Darin Lee Kaeb, appeals by right the trial court's orders sanctioning him for filing a frivolous motion to modify the conditions placed on him in a parenting-time order; the trial court ordered him to pay the attorney fees incurred by plaintiff, Stephanie Kathleen Kaeb, in defending the motion. Because we conclude the trial court erred when it determined that Darin's motion was frivolous, we reverse the trial court's decision and vacate the orders compelling Darin to pay Stephanie's attorney fees.

I. BASIC FACTS

Darin and Stephanie married in July 1997. Three children were born to them during the marriage.

In December 2009, Stephanie sued for divorce and, in July 2010, the trial court entered a consent judgment of divorce. The consent judgment granted joint legal and physical custody to the parties, but provided that the children would reside primarily with Stephanie during the school year. The judgment gave Darin extensive parenting time during the school year and equal parenting time during summers.

In March 2011, Stephanie petitioned for a custody review on the basis of a change in circumstances. Although she discussed a variety of changes, her primary allegations were that that Darin had serious alcohol and gambling problems and might have mental health issues, which impaired his ability to provide proper care and custody to the children.

The trial court entered a stipulated order changing custody in September 2011. The order gave Stephanie sole legal and physical custody of the children and provided Darin with very limited supervised parenting time. The order further provided that Darin "shall complete his alcohol treatment and therapy, comply with all aftercare treatment recommendations, and shall abstain from the use of alcohol."

The trial court entered a new order in February 2012. The order provided Stephanie with sole legal and physical custody and gave Darin limited supervised parenting time. The order also required Darin to "continue alcohol treatment and therapy" and stated that he could petition for modification after "three months of compliance with the . . . schedule and requirements . . . ."

In July 2012, Darin moved for a change in custody and unsupervised parenting time. He stated that, since the court entered its earlier orders regarding custody, he had complied with the court's requirements and had completed various programs to treat his issues with anger and alcohol, which amounted to a change in circumstances that warranted revisiting custody and parenting time. The trial court did not hold an evidentiary hearing, but eventually entered an interim order allowing Darin to have unsupervised parenting time on specified days and providing that he must "continue with [Alcoholics Anonymous (AA)] and counseling . . . ."

In May 2013, the trial court held what it characterized as a "review hearing on matters of parenting time." Darin and Stephanie both testified at the hearing and described the circumstances surrounding their current parenting-time schedule. Darin also testified

that he was complying with the court's orders to remain sober, attend AA, and continue with counseling.

At the conclusion of the hearing, the trial court found that the evidence showed that Darin had been complying with the court's requirements. But it recognized that it could not "determine whether someone [who's] been alcohol dependent or alcohol abusive has been cured of that problem." Instead, the court stated, "maintaining sobriety is something that's proven over the course of time." To that end, the trial court required Darin "to continue counseling with Dr. Ellens, and to attend AA regularly" as conditions on his exercise of parenting time, which it expanded. Darin's lawyer thereafter expressed concern that it would be unfair to require his client to show a change of circumstances every few months in order to permit further expansion. For that reason, he asked the trial court if it could set a review at fixed intervals. The trial court disagreed that automatic review would be a good use of judicial resources and stated that any further "adjustments [to parenting time] will have to be [by] motion."

In June 2013, the trial court entered an order consistent with its decision from the bench. It provided that Darin must "maintain sobriety, shall continue to counsel with Dr. Brent Ellens, [and] shall continue to attend AA regularly."

In August 2013, Darin moved to amend the trial court's order of June 2013; he asked the trial court to remove the requirement that he continue to counsel with Ellens and continue to attend AA meetings. In support of his motion, he attached a report by Dr. Michael Makedonsky.

Makedonsky reported that he had interviewed Darin and performed psychological testing on him. He opined

that Darin was not suffering from any mental illness. He also stated that Darin said he had not gambled or had alcohol since September 2011 and was "very motivated and very committed to staying alcohol free." On the basis of his interview and testing, Makedonsky stated that there was no clinical need for Darin to continue with AA meetings: "It is the professional opinion of this examiner that his past use of alcohol was caused by the marital conflicts and the divorce process at the time." He further opined that Darin was "mentally and emotionally stable," did not pose "any risk of violence," and exhibited "adequate parenting skills."

Darin also presented a letter from Ellens discharging him from counseling. In the letter, Ellens informed him that he was free to continue counseling or return if he wished, but that he believed Darin had "made sufficient progress in developing the ability to manage [his] frustration and stress" that he could "proceed and manage [his] life without further counseling."

Stephanie argued in response that there were no grounds for amending the order because Darin failed to show that there was a sufficient change in the circumstances to warrant review.

The trial court held a hearing on the motion in September 2013. At the hearing, Ellens testified that he counseled Darin during the period of his court-ordered group counseling and later during private sessions. He said he sent Darin a letter discharging him from counseling in June 2013. Ellens admitted on cross-examination that he sent the letter at Darin's request.

Makedonsky also testified concerning his evaluation of Darin, which he conducted over the course of a few days ending in July 2013. Makedonsky listed the various inventories and tests that he performed and described the purpose for their use. The results showed

that Darin was cooperating with the testing. Makedon-
sky agreed that Darin had abused alcohol in the past,
but stated that he did not believe that he was an
alcoholic and did not believe that he needed to attend
AA meetings; there was, he explained, no "clinical
reason for it . . . ."

After the close of proofs, the trial court noted the
contentious history of the case and described some of the
problematic behaviors that led to the limitations on
Darin's parenting time. The court expressed concern
that Darin insisted on deciding for himself whether he
should attend AA meetings and counseling—as could be
seen from his effort to obtain a letter and report dem-
onstrating that there was no clinical need for him to
attend either, which he sought just after the court
entered its previous order continuing those conditions.
The court, however, disagreed that the letter and report
constituted evidence of a change in circumstances suf-
ficient to justify the parenting-time order: "There is no
evidence here that there's been any change in circum-
stances since May 31, and certainly since June 20 when
the current order was entered, and no argument that
there's been any change in circumstances, only an
argument that the Court was incorrect in ordering it --
ordering continued counseling and AA attendance in the
first place." It determined that the motion was without
"legal basis" and, accordingly, frivolous. For that reason,
it ordered Darin to pay Stephanie's costs and reasonable
attorney fees as a sanction. Notwithstanding this deter-
mination, the court stated that it would "cancel those
two requirements" of its own accord. It did so because
Darin was plainly determined not to participate and
would not benefit from them.

In November 2013, the trial court entered an order
removing the requirements that Darin attend AA and

counseling. In that same month, the trial court ordered Darin to pay $2,227.50 in costs and attorney fees to Stephanie. In December 2013, the trial court amended the order to require Darin to pay $2,090.00 in costs and attorney fees.

Darin now appeals in this Court.

## II. SANCTIONS FOR A FRIVOLOUS MOTION

### A. STANDARDS OF REVIEW

On appeal, Darin argues the trial court erred when it determined that his motion to remove the requirement that he attend AA and counseling was frivolous. He maintains that the trial court improperly determined that the change-of-circumstances threshold applied to his motion and, even if that standard did apply, the court erred when it determined that there was no evidence to support the motion. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules to the facts. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). This Court, however, reviews for clear error the trial court's factual findings underlying its application of a court rule. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). To the extent that a trial court has discretion to impose a particular sanction, this Court reviews the trial court's decision for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

### B. THE LAW

In this case, the trial court found that Darin's motion to remove the requirements that he attend AA and counseling was frivolous because he made the

motion without a legal basis for doing so—specifically, because he failed to show any change in circumstances to support the motion. The trial court did not cite the authority on which it relied, but it is evident that the trial court's determination did not involve a claim or defense in a civil action. See MCR 2.114(F); MCL 600.2591(1) (providing for sanctions related to the prosecution or defense of a civil action); MCR 2.625(A)(2). Accordingly, it appears that the trial court ordered sanctions under MCR 2.114(E).

### 1. MCR 2.114(E)

Whenever an attorney or party signs a motion, that person's signature constitutes "certification" that he or she has "read the document" and, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the motion was not made for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 2.114(D). If a party brings a motion that has been signed in violation of MCR 2.114(D), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ." MCR 2.114(E). The trial court may not assess punitive damages, but may order the person who signed it or a represented party to pay "the other party or parties the amount of the reasonable expenses incurred because of the filing . . . ." MCR 2.114(E). Because MCR 2.114(E) only requires the trial court to impose an appropriate sanction, which *may* include an order to pay reasonable attorney fees, the trial court has the discretion to tailor its sanction to the circum-

stances. See *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998).

On appeal, Stephanie argues that the record evidence showed that Darin brought the motion at issue for an improper purpose. The evidence that he filed "repetitive and baseless" motions leading up to the motion to modify the parenting-time order, she maintains, is evidence from which the trial court "could conclude" that Darin filed the motion to harass or cause unnecessary delay or needlessly increase the costs of litigation in violation of MCR 2.114(D)(3). The trial court did not, however, find that Darin's motion was frivolous because he brought it for an improper purpose. Rather, it found that his motion was frivolous because there was "no evidence here that there's been any change in circumstances" since the entry of the last orders and, therefore, the motion was "without legal basis . . . ." This finding implicates MCR 2.114(D)(2) rather than MCR 2.114(D)(3). Therefore, we shall limit our review accordingly.[1]

In order to assess whether Darin's motion was "well grounded in fact" and "warranted by existing law" under MCR 2.114(D)(2), we must first address whether and how MCL 722.27(1) applies to the motion involved here.

### 2. PROPER CAUSE AND CHANGE OF CIRCUMSTANCES

Once a "custody dispute" comes before the trial court, it may take various actions "for the best interests of the child . . . ." MCL 722.27(1). The trial court may award custody to "1 or more of the parties in-

---

[1] We express no opinion regarding whether the proffered evidence would be sufficient to support a finding that Darin's motion was filed to harass, cause unnecessary delay, or needlessly increase the costs of litigation.

volved," "provide for payment of support for the child," and may provide for "reasonable parenting time of the child by the parties involved . . . by general or specific terms and conditions." MCL 722.27(1)(a) and (b). A trial court may also modify or amend "its previous judgments or orders" but only for "proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). The trial court may not modify or amend a previous judgment or order or issue a new order "so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." *Id*.

The Legislature limited a trial court's ability to modify or amend its orders in a custody case in order to erect a barrier to the removal of children from established custodial environments and to minimize disruptive changes to custody arrangements. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). Because the limitations were intended to serve as obstacles to revisiting judgments and orders, the Court in *Vodvarka*, in the context of an order affecting custody, determined that proper cause must be something more than "*any* appropriate ground for legal action"; it must be understood to mean "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511 (quotation marks omitted). Consistent with the obligation to avoid changes that might disrupt the child's custodial environment, the Court in *Vodvarka* further held that a change in circumstances cannot refer to a child's normal life changes; rather, a change in circumstances means that, "since the entry of the last custody order, the conditions surrounding custody of the child, which

have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513.

Since the decision in *Vodvarka*, this Court has recognized that the definitions applied by that Court to "proper cause" and "change of circumstances" should not be applied to orders amending or modifying parenting time. *Shade v Wright*, 291 Mich App 17, 28; 805 NW2d 1 (2010). *Vodvarka* should not be so extended, the Court in *Shade* explained, because a change in parenting time did not implicate the same concerns as a change in custody:

> The *Vodvarka* definitions of "proper cause" and "change of circumstances" are inapplicable to this case, in part, because the rationale for imposing more stringent constructions on the terms "proper cause" and "change of circumstances" with respect to custody determinations is far less applicable with respect to parenting time determinations. With respect to child custody disputes, "[t]he goal of MCL 722.27 is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009). "Providing a stable environment for children that is free of unwarranted custody changes . . . is a paramount purpose of the Child Custody Act . . . ." *Vodvarka*, 259 Mich App at 511. Therefore, in the context of a child custody dispute, the purpose of the proper cause or change of circumstances requirement is "to 'erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders.' " *Id.* at 509, quoting *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 593-594; 532 NW2d 205 (1995).

> Such concerns do not exist, however, when a modification of parenting time does not alter the established custodial environment because determinations regarding child custody and parenting time serve different purposes. Whereas the primary concern in child custody determina-

tions is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents. See MCL 722.27a. [*Shade*, 291 Mich App at 28-29 (alteration in original).]

The Court in *Shade* declined to precisely define what proper cause or change of circumstances would be sufficient to warrant a change in parenting time, but nevertheless determined that the types of normal life-changes experienced by the child in its case were sufficient to warrant modification of the parenting-time arrangements, even though those changes would be insufficient to establish grounds for a change in custody under the definitions applied in *Vodvarka*. *Id.* at 30-31.

The Legislature authorized trial courts in custody disputes to provide for reasonable parenting time "for the best interests of the child . . . ." MCL 722.27(1); see also MCL 722.27a(1) ("Parenting time shall be granted in accordance with the best interests of the child."). The court may provide for parenting time through "general or specific terms" and may subject the parenting time to "conditions" when it is in the child's best interests. MCL 722.27(1)(b); see also MCL 722.27a(8) (stating that a parenting-time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time). Consequently, the trial court had the authority to order Darin to attend AA meetings and participate in counseling as conditions on his exercise of parenting time, if the court determined that those restrictions were in the children's best interests.

After complying with the trial court's requirements for some time, Darin moved for the trial court to remove the conditions that it had imposed on his parenting

time. See MCL 722.27(1)(b).[2] Before the trial court could grant Darin's request, he had to demonstrate that there was proper cause or a change of circumstances that warranted the requested relief. MCL 722.27(1)(c). But, as the Court in *Shade* aptly noted, what constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the requested amendment or modification. If the request involves a change that alters an established custodial environment, then the more stringent framework from *Vodvarka* will apply. *Shade*, 291 Mich App at 27. If, however, the request involves a change to the duration or frequency of parenting time, the less stringent standard discussed in *Shade* will apply. See *id*. at 29-31 (discussing the need for flexibility in parenting-time schedules because the child's needs will change with age and with the level of the child's involvement in activities). Here, the requested modification did not involve either a change in custody or a change in the duration or frequency of parenting time—it involved a request to remove a condition on the exercise of parenting time. Consequently, neither *Shade* nor *Vodvarka* is directly on point.

Because the imposition, revocation, or modification of a condition on the exercise of parenting time will generally not affect an established custodial environment or alter the frequency or duration of parenting time,[3] we are persuaded that a lesser, more flexible, understand-

---

[2] Because the trial court imposed the requirements at issue as conditions on Darin's parenting time, we need not determine whether MCL 722.27(1)(c) applies to every order involving custody, child support, or parenting time even if the requested change would not alter custody, child support, parenting time, or a condition on parenting time.

[3] We do not, however, foreclose the possibility that the imposition, revocation, or modification of a condition on parenting time might be so significant that it amounts to a change in custody or parenting time.

ing of "proper cause" or "change in circumstances" should apply to a request to modify or amend a condition on parenting time. As in *Shade*, it is evident that even normal changes to the lives of the parties affected by a parenting-time order may so alter the circumstances attending the initial imposition of a condition that a trial court would be justified in revisiting the propriety of the condition. See *Shade*, 291 Mich App at 29-31. A condition that was in the child's best interests when the child was in elementary school might not be in the child's best interests after he or she reaches high school. Even ordinary changes in the parties' behavior, status, or living conditions might justify a trial court in finding that a previously imposed condition is no longer in the child's best interests. We conclude that "proper cause" should be construed according to its ordinary understanding when applied to a request to change a condition on parenting time; that is, a party establishes proper cause to revisit the condition if he or she demonstrates that there is an appropriate ground for taking legal action. See *Vodvarka*, 259 Mich App at 510-511 (recognizing that "proper cause" ordinarily means any appropriate ground for taking legal action, but declining to give the phrase its ordinary meaning when applied in the context of a request to alter an established custodial environment because that would not serve the purpose of erecting a barrier to unwarranted changes to custody). We hold, consistently with a trial court's authority to adopt, revise, or revoke a condition whenever it is in the best interests of the child to do so, see MCL 722.27(1); MCL 722.27a(1) and (8), that a party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change in circumstances that would justify a trial

court's determination that the condition in its current form no longer serves the child's best interests. MCL 722.27(1)(c).

### C. APPLYING THE LAW

In this case, Darin moved to amend the parenting-time order at issue by removing the conditions on his exercise of parenting time. Specifically, he argued that the requirements that he attend AA meetings and continue counseling with Ellens were no longer necessary. He supported his motion with a letter from Ellens and a report by Makedonsky. In his letter, Ellens opined that Darin had demonstrated sufficient progress in his ability to handle his frustration and stress that he no longer needed to attend regular counseling sessions. Makedonsky similarly reported that he subjected Darin to various tests and determined that there was no clinical reason justifying Darin's continued participation in AA meetings. Both Ellens and Makedonsky testified consistently with these submissions at the hearing on the motion to modify the parenting-time order. Nevertheless, the trial court found that Darin's motion to remove the conditions was frivolous because he did not attempt to show that there had been a change in circumstances since the inclusion of the conditions in the last order, which the court believed was required under MCL 722.27(1)(c).

On this record, we conclude the trial court clearly erred when it found that Darin's motion was submitted in violation of MCR 2.114(D)(2). Even assuming that Ellens's letter and Makedonsky's report did not establish a change in circumstances since the trial court had last considered whether it was in the children's best interests to include the conditions on the parenting-time order, those documents were sufficient to establish

"proper cause" for the trial court to reconsider whether
the conditions remained in the children's best interests.
MCL 722.27(1)(c); MCL 722.27a(1). Ellens offered his
opinion that the counseling sessions were no longer
necessary to address the concerns that initially brought
Darin to him. Likewise, Makedonsky offered his expert
opinion that there was no clinical reason to require
Darin to attend AA meetings. Although the trial court
was free to reject the opinions and conclude that it was
in the children's best interests to continue to impose
those conditions, that alone did not warrant finding that
the motion was frivolous. See *Kitchen v Kitchen*, 465
Mich 654, 663; 641 NW2d 245 (2002) ("[M]erely because
[a] Court concludes that a legal position asserted by a
party should be rejected does not mean that the party
was acting frivolously in advocating its position."). A
reasonable trial court would be justified in revisiting
whether the conditions remained in the children's best
interests on the basis of these expert opinions. Indeed,
although it stated that it was not doing so for the
reasons proffered by Darin in his motion, after the close
of proofs, the trial court found on the whole record that
it was appropriate to remove the conditions at issue.
Consequently, it cannot be said that Darin's motion was
not "well grounded in fact" and "warranted by existing
law." MCR 2.114(D)(2).

The trial court clearly erred when it found that
Darin's motion was frivolous under MCR 2.114(D)(2).
See *Johnson Family Ltd Partnership*, 281 Mich App at
387. Therefore, it erred when it ordered him to pay
Stephanie's costs and reasonable attorney fees associ-
ated with the motion under MCR 2.114(E).

### III. REMAND TO DIFFERENT JUDGE

Darin also argues on appeal that this Court should
assign this case to a different judge on remand because

it is evident from the record that the trial court harbored animosity against him and would likely be unable to put aside its view of him. We have carefully reviewed the record and have found no evidence that the trial court harbors a bias against Darin or that it would be unable to put aside previously expressed views or findings. See *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). Accordingly, we decline to assign this case to a different judge on remand.

### IV. CONCLUSION

The trial court clearly erred when it found that Darin filed his motion to remove the conditions on his ability to exercise parenting time in violation of MCR 2.114(D)(2). The record shows that he properly supported his motion with documentary evidence and that the evidence established a proper cause for revisiting the conditions. See MCL 722.27(1)(c). Consequently, the trial court erred when it ordered Darin to pay the costs and attorney fees that Stephanie incurred to defend the motion as a sanction under MCR 2.114(E).

We reverse the trial court's decision to order sanctions, vacate the orders requiring Darin to pay costs and fees to Stephanie, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

HOEKSTRA, J., concurred with M. J. KELLY, P.J.

MURPHY, J. (*dissenting in part and concurring in part*). I would affirm the trial court's order awarding attorney fees to plaintiff, Stephanie Kaeb, associated with the costs incurred in responding to the motion brought by defendant, Darin Kaeb, to modify the

conditions placed on him relative to his exercise of
parenting time. Accordingly, I respectfully disagree
with the majority's holding on this issue. I do agree
with the majority that, assuming the issue need be
reached, there is no valid basis to remand the case to
another trial judge.

I shall begin by making the assumption that the
majority correctly states that, under MCL 722.27(1)(c),
"a party requesting a change to an existing condition
on the exercise of parenting time must demonstrate
proper cause or a change in circumstances that would
justify a trial court's determination that the condition
in its current form no longer serves the child's best
interests." Additionally, I agree with the majority's
recitation of the factual history of this case, its reliance
on MCR 2.114(D)(2) and (E), its discussion of the
principles applicable to an analysis under MCR 2.114,
and the majority's enunciation of the standards of
review.

At the hearing on May 31, 2013, which was an
evidentiary hearing and concerned multiple motions,
defendant's continued attendance at AA meetings and
counseling with Dr. Brent Ellens were two of the
primary subjects of testimony in connection with
whether defendant should be granted additional par-
enting time. Defendant argued that he had been faith-
fully going to counseling with Dr. Ellens and to AA
meetings; therefore, his parenting time should be ex-
panded. Although not to the full extent requested by
defendant, the trial court indeed expanded his parent-
ing time, conditioned on regular attendance at coun-
seling sessions and at AA meetings. About three
months later, at the conclusion of the hearing on
defendant's motion to modify the conditions, the trial
court ruled, in part, as follows:

[A]fter a hearing held on May 31 of this year, an order was entered, based on the Court's ruling on June 20, that said that Mr. Kaeb was required to continue his counseling with Doctor Ellens, and he was required to continue his attendance at AA.

It appears that within days of that order being entered, Mr. Kaeb requested and obtained from Doctor Ellens, a letter stating that he apparently doesn't need any further counseling, and, in fact, hasn't had any since the entry of that order. The -- the referral to Doctor [Makedonsky] was apparently for the purpose of establishing, at Mr. Kaeb's request, that he doesn't need AA counseling -- or doesn't need to attend AA. And there's a lot of testimony here about the differences between an alcohol abuser and an alcoholic. And frankly, the differences between the two appear[] to the Court to be irrelevant as it pertains to the safety of the children. Someone who's abusing alcohol and drives them -- with them in their car is just as much at risk of -- of injuring or killing the children as an alcoholic who drinks and gets in a car and drives the children. So frankly, the proper diagnosis of Mr. Kaeb's condition isn't all that helpful to the Court.

What's helpful to the Court is an analysis of his behavior and how we're going to prevent that kind of behavior in the future. Mr. Kaeb is insistent on deciding for himself all of these issues, as is evidenced by the fact that he's never presented any proof of attendance at AA, in spite of being ordered to attend, and he requested and obtained a discharge letter from his counselor just days after being ordered to continue counseling.

The Court, in considering a motion to modify a parenting time order, which is what this request is, is required to determine whether there's been a material change in circumstances or other proper cause sufficient to justify a modification . . . . There is no evidence here that there's been any change in circumstances since May 31, and certainly since June 20 when the current order was entered, and no argument that there's been any change in circumstances, only an argument that the Court was incorrect in ordering . . . continued counseling and AA

attendance in the first place. So the . . . motion appears to
be without legal basis, and therefore, frivolous. I'm going
to order that Mr. Kaeb pay all of plaintiff's attorney's fees
in responding to this motion and attending this hearing.

It is clear from the record that following the eviden-
tiary hearing on May 31, 2013, defendant almost imme-
diately defied the court's ruling regarding required
attendance at counseling and AA meetings and instead
sought support for his view that he was not in need of
counseling or help through AA, even though defendant's
parenting time had just been expanded because of prior
and expected continued attendance at counseling and
AA meetings. If defendant was not in need of counseling
and AA at that point, he certainly was not in need of
counseling and AA shortly beforehand on May 31st
when the hearing was conducted. There was no miracu-
lous change of circumstances, and defendant failed to
present the evidence at the May 31st hearing upon
which he later relied, even though this evidence clearly
could have been procured and submitted on May 31st.
When the trial court spoke of defendant's motion being
frivolous and absent a legal basis, the court was recog-
nizing that nothing had changed since May 31, 2013,
and that defendant was essentially seeking reconsidera-
tion of the decision to continue parenting-time condi-
tions. I conclude that there was no change of circum-
stances, MCL 722.27(1)(c), only a change in defendant's
litigation strategy once he obtained expanded parenting
time predicated on continued counseling and AA atten-
dance. This was not a situation in which the conditions
no longer served the children's best interests—as if
there were sudden developments after May 31, 2013—
because of previously unavailable evidence showing
that defendant's alcoholism or alcohol abuse had come
under control to the extent that counseling and AA were
no longer necessary. Under these circumstances, I am

also of the view that there was no *"proper* cause" to revisit the parenting-time conditions. MCL 722.27(1)(c) (emphasis added).

Accordingly, defendant's motion to modify the conditions was not truly "well grounded in fact," nor "warranted by existing law," MCR 2.114(D)(2); therefore, the imposition of attorney-fee sanctions under MCR 2.114(E) was appropriate. The trial court did not clearly err by finding defendant's motion frivolous. See *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). I also note that the trial court's decision to dispense with the conditions in no way negated or undermined its determination that defendant's motion was frivolous; rather, the court simply decided on its own to take a different approach given defendant's reticence about complying with the conditions. It is my position that we should affirm the trial court's award of attorney fees to plaintiff. Finally, I agree with the majority regarding defendant's request to have the case assigned to a different trial judge; reassignment is not warranted.

I respectfully dissent in part and concur in part.